IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILFORD LYN HOLLOWAY, #232321, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | CASE NO. 3:11-CV-345-WHA |
| ) | |
| J. C. GILES, et al., ) | |
| ) | |
| Respondents. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Claiming he is actually innocent of the crime of rape in the first degree, Holloway

seeks habeas relief in a 28 U.S.C. § 2254 petition filed on May 5, 2011, which is some eight

years after his 2003 conviction became final.  Pursuant to Rules 8(a), *Rules Governing*

*Section 2254 Cases in the United States District Courts*, the court concludes that the petition

for habeas corpus relief is due to be denied.

## I.  Procedural History

Prior to the 2003 indictment for rape which is the subject of the instant petition, on

February 22, 2002, Holloway was indicted in the Randolph County Circuit Court for enticing

a child for immoral purposes in violation of ALA. CODE § 13A-6-69.  In that indictment the

child was named, but the redacted indictment which is in the record before the court

identifies her as MW.  (Doc. # 23-2 at p. 2).[1]  One year later, on February 21, 2003, Holloway

---

[1] All references to the record use the document numbering system of the court's electronic docketing
system.

was indicted in the Randolph County Circuit Court for first-degree rape of his daughter N. H. (doc. # 16-1 at 12) in violation of ALA. CODE § 13A-6-61 and for incest in violation of ALA. CODE § 13A-13-3.  (Doc. # 23-2 at 29).  On November 4, 2003, pursuant to a plea agreement, Holloway entered a guilty plea to first degree rape and to enticing a child for immoral purpose.  The prosecution agreed to drop the incest charge as part of the plea bargain.  Holloway was sentenced to serve a term of seventeen (17) years imprisonment on the first-degree rape conviction and a concurrent three (3) year term of imprisonment on the enticing a child for immoral purposes conviction.  (Doc. # 23-3, Plea colloquy and sentencing).  Holloway did not take a direct appeal because he waived his right to appeal as part of the plea bargain. (doc. # 23-3 at 4)  Thus, his conviction became final on December 16, 2003.  ALA. R. APP. P. 4(b)(1).

Some six years later, on November 25, 2009, Holloway filed in state court an ALA. R. CRIM. P. 32 petition for postconviction relief.[2]  The trial court summarily denied the

_____

[2]  Holloway raised the following claims: (1) that, because he was indicted for the second-degree rape of an individual who did not meet the statutory age requirement of Section 13A-6-62 of the Code of Alabama 1975, his (Holloway's) right to Due Process notice was violated when he was forced to defend against an offense that did not exist at law; (2) that, because there was a material variance between the State's proof of first-degree rape and its pleading of second-degree rape, his (Holloway's) right to Due Process was violated by his rape conviction; (3) that his (Holloway's) right to Due Process was violated when the prosecution illegally withheld from him exculpatory information in the form of a doctor's report stating that the condition of his four-year old victim's hymen, immediately after the alleged incident of sexual abuse, did not show evidence of sexual penetration; (4) that he (Holloway) had newly discovered evidence of his actual innocence of the crime of rape, in the form of an Alabama Department of Human Resources (DHR) doctor's report stating that the condition of his four-year-old victim's hymen immediately after an alleged incident of 1990 sexual contact did not show evidence of penetration; (5) that his trial counsel was ineffective for failing to challenge the legality of the State's second-degree rape indictment; (6) that, in the light of the fact that after the entry of his guilty plea, but before his sentencing, his victim tried to recant her allegation of sexual abuse, his (Holloway's) trial counsel was ineffective for failing to seek his withdrawal his guilty plea; and, (7) that, because his victim did not meet the age requirement of the second-degree rape offense for

petition as untimely.   This time Holloway did appeal, but on August 20, 2010, in a memorandum opinion the Alabama Court of Criminal Appeals affirmed the dismissal of Holloway's postconviction petition. (Doc. # 14-5). The Alabama Court of Criminal Appeals found that the trial court did not err in dismissing Holloway's petition because his nonjurisdictional claims were filed well after the one year time limitation established in ALA. R. CRIM. P. 32.2(c).   The court also found that Holloway's claims of newly discovered evidence showing his innocence did not entitle him to relief because he failed to establish that the evidence was unknown to him and could not have been discovered through reasonable diligence.   Holloway did not seek certiorari review in the Alabama Supreme Court.

Holloway's 28 U.S.C. § 2254 petition challenging his first degree rape conviction was filed in this court on May 5, 2011.   These are Holloway's claims as stated by him:

1.   Actual innocence – fundamental miscarriage of justice.   Constitutional violations have resulted in the conviction of one who is actually innocent and had the evidence been presented it is more likely than not that no reasonable juror would have found Holloway guilty beyond a reasonable doubt.

2.   The prosecution gained the conviction by the unconstitutional failure to disclose evidence favorable to the defendant.   The prosecution failed to disclose a physical examination resulted (sic) which concluded that the alleged victim's hymen was in tact (sic) and showed no signs of sexual abuse and that the victim had never engaged in any form of sexual intercourse and since sexual intercourse is a essential prerequisite (sic) to Rape first degree the physical examination proves Holloways (sic) actual innocence.   The prosecution also failed to disclose a mental examination result which

which he was indicted and convicted, his (Holloway's) trial counsel was ineffective for failing to challenge the legality of Holloway's first-degree rape indictment.  (Doc. # 14-3).

concluded that the alleged victim was making these allegations up.   The prosecution also failed to disclose exculpatory statements, incident reports etc. (sic)

3.      Denial of effective assistance of counsel. The defense counsel failed to investigate the case and request that the trial court conduct an in camera review of the Randolph County D. H. R. file which contained a physical examination result, mental examination result as well as other exculpatory evidence that would have proven the petitioner's innocence.   The defense counsel's failure to investigate the case coupled with the prosecutions (sic) failure to disclose exculpatory evidence rendered the defense counsel useless.   So the defense counsel mislead this petitioner into a guilty plea then the alleged victim appeared and testified that Holloway was innocent.   Holloway requested to withdraw the plea and the defense counsel failed to appeal the trial court decision which resulted in the conviction of an innocent man.

4.      Plea of guilt was unknowingly induced, not voluntary or intelligently entered. The defense counsel could not defend Holloway due to the prosecutions (sic) failure to disclose exculpatory evidence the trial counsels failure to fully investigate the case.   Therefore, Holloway was forced into a plea of guilt and the trial counsel could not intelligently advise Holloway to plead guilty in light of the exculpatory evidence not being disclosed then after the petitioner plead guilty Holloway requested to with draw the plea the judge refused to allow him to withdraw the plea.

5.      Ground five the conviction was gained by the use of perjured testimony.   The entire case was built on one statement and the alleged victim appeared at the sentencing hearing and testified that the statement was a lie.   The prosecution as well as the trial court had a constitutional duty under due process to stop the prosecution.

(Doc. # 1 at 5-6).

## II.  Timing and Procedural Deficiencies

In response to Holloway's petition, the respondents contend it is barred by the one-year limitation period applicable to 28 U.S.C. § 2254 petitions.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year statute of limitations for

filing a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The statute of limitations starts running on the latest of: "(A) the date on which the judgment became final by the conclusion of direct review ... or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(A), (D). Under either trigger date, the limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review ... is pending." *Id.* § 2244(d)(2).

As explained above, Holloway's rape conviction became final in 2003 which is after the effective date of the federal statute of limitations.[3] Therefore, Holloway was required to file his § 2254 petition within one year of the date his conviction became final, exclusive of the time that any properly filed state post-conviction petition related to his conviction remained pending in state court. Holloway filed a state post-conviction petition challenging his murder conviction on November 25, 2009. However, this petition failed to toll the one-year period of limitation because it was not filed within the limitation period required by state law and, therefore, was not "properly filed" for the purpose of tolling the federal limitation period. *See* 28 U.S.C. § 2244(d)(2). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's [state post-conviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling [of the limitation period] under § 2244(d)(2)."); *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317

---

[3]   Subsection (d) was added by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Act became effective on April 24, 1996.

(11th Cir. 2006) (untimely collateral motion deemed "not 'properly filed' under § 2244(d), and it could not toll the federal one-year period of limitation.")  Additionally, the respondents contend that all of Holloway's claims are procedurally defaulted because either the claims were not raised in Holloway's postconviction petition or were improperly raised through inadequate pleading.  (Doc. # 16 at 14-15).

### III.  Discussion

A.  <u>Holloway's Actual Innocence Claim is a Gateway Claim.</u>  Holloway does not dispute that his claims are barred by the limitation period contained in § 2244(d) as well as procedurally defaulted.  However, Holloway claims that newly discovered evidence shows that he is actually innocent of rape and that his innocence excuses his failure to timely seek relief or properly exhaust his claims in state court.  As such, Holloway's actual innocence claim is not itself the constitutional basis of his habeas petition. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (holding that no federal habeas relief is available for freestanding, non-capital claims of actual innocence).  Rather, Holloway's actual innocence claim is a "gateway" claim, that is, a claim which, if successful, creates an exception to procedural or timeliness bars and allows this court to consider his constitutional claims.  *See McQuiggin v. Perkins*, ⸺ U.S. ⸺, 133 S.Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."); *Schlup v. Delo*, 513 U.S. 298 (1995); *Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001).  To be successful,

Holloway must

> (1) present "new reliable evidence . . . that was not presented at trial," . . . and (2) to show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence.

*Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted).

But, there is a further hurdle which Holloway must surmount first before the court may consider his claims. Holloway must make a sufficient showing of his actual innocence before this court may consider whether an exception to the bars should be granted. *Rozzelle*, 672 F.3d at 1010 ("our inquiry here is first focused on whether . . . [the petitioner] has made a sufficient showing of "actual innocence . . .")

B. <u>Holloway's Difficulties With The Law</u>. Resolution of whether Holloway has made the necessary actual innocence showing involves delving more deeply into the history of this case which is mired in ambiguity and confusion. To that task the court now proceeds.

On February 21, 2003, a Randolph County, Alabama grand jury returned an indictment against Holloway. Count one[4] of the indictment (doc. # 23-2 at 29) charged him as follows:

---

[4] Count two of the indictment, the count that was later nol prossed, charged Holloway with incest. "The Grand Jury of said County further charges that before the finding of this Indictment W . . . L . . . H . . . alias, whose name is otherwise unknown to the Grand Jury, did, engage in sexual intercourse with N . . . H . . ., a person he knew to be legitimately or illegitimately his descendant by blood, in violation of Section 13A-l3-3 of the Code of Alabama, against the peace and dignity of the State of Alabama." (Doc. # 23-2 at 29).

The Grand Jury of said County charge that before the finding of this Indictment W . . . L . . . H . . ., alias, a male whose name is otherwise unknown to the Grand Jury, did engage in sexual intercourse with N . . . a female, who was less than twelve years of age, the said W . . . L . . . H . . . being sixteen years of age or older and at least two years older than the said N . . . H . . . , in violation of Section 13A-6-62 of the Code of Alabama, against the peace and dignity of the State of Alabama.

The facing page of the standard indictment form used for the indictment listed this charge as "RAPE 1°."  (Doc. # 23-2 at 30).  However, rape in the first degree is set forth in Alabama law at § 13A-6-61, not § 13A-6-62.

(a) A person commits the crime of rape in the first degree if:

(1) He or she engages in sexual intercourse with a member of the opposite sex by forcible compulsion; or

(2) He or she engages in sexual intercourse with a member of the opposite sex who is incapable of consent by reason of being physically helpless or mentally incapacitated; or

(3) He or she, being 16 years or older, engages in sexual intercourse with a member of the opposite sex who is less than 12 years old.

ALA. CODE § 13A-6-61.

Given the language used in the indictment which tracks in part the statutory language of the first degree rape statute by referring to the victim as less than twelve years of age and the defendant as a person sixteen years of age or older, it is obvious that the grand jury did indeed intend to charge the defendant with first degree rape and that the reference to "Section

13A-6-62[5] of the Code of Alabama" was a mere typographical error.

As evidenced by the record in *Holloway v. Davenport*, 3:11-cv-436-WKW (M.D. Ala. 2013), these Randolph County indictments were not Holloway's only difficulties with the law.[6]  On March 22, 2003, Holloway was indicted in Calhoun County, Alabama for sodomy in the first degree.[7]

> The Grand Jury of Calhoun County charge that, before the finding of this indictment,
>
> WILFORD LYN HOLLOWAY
>
> whose true name to the Grand Jury is otherwise unknown, did, on or about sometime between and or including the dates of November 17, 2001 through December 2, 2001, engage in deviate sexual intercourse with M . . . D . . . W . . . by forcible compulsion, in violation of Section 13A-6-63 of the Code of Alabama . . .

(Doc. # 27-6, 3:11-cv-436-WKW).

On the same date, Holloway was also indicted in Calhoun County for rape in the first degree.

---

[5] This section of the Alabama Code defines second degree rape.

(a) A person commits the crime of rape in the second degree if:

(1) Being 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the member of the opposite sex.

(2) He or she engages in sexual intercourse with a member of the opposite sex who is incapable of consent by reason of being mentally defective.

[6] The court may and does take judicial notice of its own records.  *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999).

[7] Holloway identified the victim MW as the daughter of his girlfriend Loretta Cummings.  (Doc. # 2 at 2, 3:11-cv-436-WKW).

The Grand Jury of Calhoun County charge that, before the finding of this indictment,

WILFORD LYN HOLLOWAY

whose true name to the Grand Jury is otherwise unknown, a male, did, on or about sometime between and or including the dates of November 17, 2001 through December 2, 2001, engage in sexual intercourse with M . . . W . . . D . . . W . . . a female, by forcible compulsion, in violation of Section 13A-6-61 of the Code of Alabama . . .

(Doc. # 27-7, 3:11-cv-436-WKW).

These two indictments were not the subject of Holloway's habeas petition in *Holloway v. Davenport*, 3:11-cv-436-WKW (M.D. Ala. 2013). In that case, Holloway attacked his conviction for enticing M.W. Because Holloway had completed his three year sentence before he filed the petition in 3:11-cv-436, that case was dismissed on jurisdictional grounds. But the record in that case contains the sordid facts about the Calhoun County cases. Holloway pled guilty to both of the charges against him in Calhoun County and was sentenced to concurrent terms of seventeen years imprisonment. The Randolph County judge who sentenced Holloway to seventeen years on the rape conviction ordered that his sentence run concurrent with all other sentences imposed on Holloway. The plea colloquy confirms that all of these sentences were the result of the plea bargain negotiated by Holloway's counsel.

Pursuant to your plea agreement, I'm going to nol pros count two of the indictment as agreed upon. I'm going to sentence you to a term of 17 years in the State of Alabama Department of Corrections. I'm going to run that sentence concurrently with any other sentences that you may have.

MR. JACKSON: That's concurrent. He has cases in Calhoun County that it should run concurrent.

10

THE COURT: I'm saying concurrent with any case that he has.

(Doc. # 23-3 at 9-10).

C.   <u>Holloway's Postconviction Difficulties in State Court</u>.   As already noted, Holloway did not appeal any of these convictions because he waived his right to appeal as part of the plea bargains.  Holloway waited until 2009 to seek relief from his convictions in a postconviction petition filed in state court.  Among the claims raised by Holloway in that petition was a claim, as stated by him, that a fatal variance existed between the sentence and the evidence.  (Doc. # 14-3 at 36).

> (1) The forensic science report clearly states that if any abuse occurred, it was when the alleged victim was twelve year old or older, not under the age of twelve as the petitioner is charged and sentenced too.
> (2) When the petitioner plead guilty the Honorable Judge . . . asked the petitioner how old was the victim, the petitioner replied twelve, which is a second degree, not first.

(*Id.* at 36).

In the same petition, Holloway further claimed that in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution failed to disclose a medical report showing that his daughter had not been abused when she was four.

> The petitioner avers that due to the withheld material evidence (doctors report) coupled with trial counsels inability to defend the petitioner because of the withholding of evidence, the petitioner avers that he was forced to plead guilty to crimes in which he was innocent of and petitioner avers that he would not have otherwise pleaded guilty  . . .

(*Id.* at 41).

Thus, in Holloway's postconviction petition filed in the trial court he claimed that he was innocent of the first degree rape of his daughter because an undisclosed medical report proved no abuse occurred when she was four years old and that the plea colloquy proved that his daughter was older than twelve when he had sex with her. After the trial court summarily denied that petition, Holloway claimed in the Alabama Court of Criminal Appeals that in October 2009 he discovered the evidence which proved his innocence. (Doc. # 16-1 at 6).

> The alleged victim in this case is . . . this petitioner's daughter, when . . . [she] was around 4 years old, this petitioner and . . . [her mother] was going through a divorce. This petitioner was a truck driver and it was his weekend to see . . . [his daughter], so Mr. Holloway ask (sic) . . . if [his daughter] could go to West Virginia with him. . . . About two days after they had returned home, Randolph County DHR called Mr. Holloway and requested that Mr. Holloway come by and talk to them . . . [T]hey informed Mr. Holloway that after he and . . . [his daughter] had returned home from the trip, . . . [a relative] saw blood in . . . [his daughter's] panties. . . . [A]ccording to . . . [this relative and his daughter's mother, his daughter] told them that her daddy this petitioner had had sex with her. DHR asked this petitioner about these allegations.
>
> Mr. Holloway denied any knowledge of these allegations or any wrongdoing. Randolph County DHR did a complete investigation which included . . . [taking his daughter] to Dr. Horn . . . for an examination. Dr. Horns Report confirmed no signs of sexual abuse, no tears, no abrasions etc. (sic). Dr. Horns report also confirmed that . . . [his daughter] had never had sexual intercourse of any kind . . . So Randolph County DHR did not proceed any further with these allegations because DHR had determined that the allegations were in fact false.
>
> Approximately eleven years later . . . [Holloway's daughter] was being interviewed by Calhoun County DHR. During this interview . . . [she] made a statement to Calhoun County DHR "that when she was four, she went on a truck trip with her daddy . . . and . . . her daddy had sex with her."
>
> Calhoun County DHR turned this statement over to Randolph County DHR and the Randolph County district attorney's office [] who then indicted Mr. Holloway for Rape, Second, Incest, and enticing a minor.

(Doc. # 16-1 at 8-9).

Holloway again contended in his initial appellate brief that even though his counsel had filed a discovery request in state court, the prosecution did not turn over the medical examination report showing he was innocent of sexual abuse of his four year old daughter. Holloway alleged that he only learned of this report in 2009 after six years of diligent searching. Holloway did not raise in this brief or his reply brief any claim about his daughter being older than twelve. Holloway's conviction was affirmed by the Alabama Court of Criminal Appeals in a memorandum opinion issued on August 20, 2010. (Doc. # 14-5).

D.  <u>Holloway's Federal Habeas Filings</u>.  Holloway's 28 U.S.C. § 2254 petition was filed in this court on May 5, 2011. Unlike his filings in state court, Holloway supported his claim of actual innocence with two affidavits from himself and from Melinda Nolan.[8] In relevant part, Nolan's first affidavit states

> In October, 2009 . . . [the victim] confessed to myself, Anthony Holloway,[9] and Evelyn Holloway[10] that during the investigation when she was four that the Randolph County Department of Human Resources sent her to Doctor Horn in Lineville, Alabama for a physical examination.
>
> [The victim] . . . stated that the conclusion of the physical examination was that her hymen was intact and that it showed no signs of sexual abuse because she had never been sexually penetrated, that if any blood was present that it came from another source.

---

[8]  Nolan is Holloway's sister.  (Doc. # 27 at 19, 3:11-cv-436-WKW).

[9]  The brother of the victim.

[10]  Holloway's mother.

[The victim] . . . also told us that the Randoplh (sic) County Department of Human Resources sent her to psychiatrist who determined that she was making these allegations up that sehe (sic) did'nt (sic) even know what the word sex meant at that age.

[The victim] . . . stated that the Randolph County Department of Human Resources had these physical and mental examination reports in their possession and these reports was the reason no criminal cahrges (sic) were pusued (sic) at the time of the original investigation.

[The victim] . . . has told all three of us on numerous occasions as well as others that Wilford [Holloway] has never touched her in any sexual kind of way and that Wilford is in fact innocent.

October, 2009 was the first time I and Anthony Hollway and Evelyn Holloway learned of this evidence and it's whereabouts.  After we learned of these facts we notified Wilford Holloway of this evidence and it's whereabouts.  October, 2009 was also the first time Wilford learned of this evidence and it's whereabouts.

(Doc. # 1-1 at 2)

Nolan's second affidavit states that she was in the courtroom on November 4, 2003

and recites what allegedly happened shortly after Holloway entered his plea.

Holloway signed the guilty plea and the alleged victim . . . appeared before Honorable Judge Tom Young approximately 15 minutes later and testified to Honorable Tom Young that she had lied and that the allegations made against Holloway were false and that Holloway had never committed any such act/crime.

Honorable Judge Tom Young addressed Holloway in open court and informed Holloway that the alleged victim . . . wanted to recant her testimony. However, Honorable Judge Tom Young informed Holloway that he would not allow the alleged victims testimony and that he, Honorable Judge Tom Young, would proceed with sentencing.

Holloway requested that his Attorney Jason Jackson withdraw the guilty plea; however, Honorable Judge Tom Young refused to allow Holloway to

withdraw his guilty plea and sentenced Holloway to seventeen (17) years in the
Alabama Department of Corrections.

[The victim] . . . not only testified to Honorable Judge Tom Young that
she had falsely accused Wilford Holloway of rape, but has admitted numerous
times since that day that the allegations against Holloway were in fact false to
me as well as several others and that Holloway is falsely imprisoned and is <u>in
fact innocent</u>.

(Doc. # 1-3 at 1-2) (emphasis in original).

In conjunction with his petition, Holloway also filed a motion for leave to conduct

discovery.  (Doc. # 8).  Holloway requested the production of (1) Doctor Horn's report of his

examination of the victim when she was four years old, (2) a copy of the mental examination

of the victim, and (3) "the statements, incident reports and investigation reports, from the

original investigation."   In this motion, Holloway also continued to pursue his actual

innocence argument.

Dr. Horn concluded that the alleged victims hymen was in tact and showed no
signs of sexual abuse, that the alleged victim had never engaged in any form
of sexual intercourse and had never been sexually penitrated (sic).

Therefore, since sexual intercourse is a essential element that must occur for
the criminal offense of Rape in the first degree to have been committed, this
physical examination proves Holloway's innocence.

(Doc. # 8 at 2-3).

In addition, Holloway argued that these documents "will prove that the allegation this

petitioner was convicted is the exact same allegation that had been made and investigated

over 10 years prior to Holloway's arrest and conviction."  (*Id*. at 3).

Based on the respondents' response to the motion, (doc. # 14), the court denied the

15

motion for discovery.  However, the court later ordered the respondents to answer Holloway's actual innocence claims concerning the investigative reports and his contention concerning what happened at the change of plea.  (Doc. # 17).  The respondents did so, filing several documents under seal for an *in camera* review, but no report from a Dr. Horn was among those documents.[11]

On June 10, 2011, the respondents filed an answer (doc. # 16) to Holloway's petition in which the respondents correctly observed that Holloway's claims were untimely and procedurally defaulted.  In response to Holloway's claim of innocence, the respondents argued that this miscarriage of justice claim failed because he did not pursue it diligently.[12]

On August 17, 2011, Holloway filed a motion for leave to amend his habeas petition (doc. # 38) which was granted.  (Doc. # 39).  In this amendment, Holloway again claims he is actually innocent of first degree rape.  However, rather than claiming his innocence based on Dr. Horn's examination of his four year old daughter, Holloway asserted his actual innocence referring to the argument advanced by the respondents in the supplemental answer filed on July 18, 2011.

> As a merits proposition, Holloway's claim of actual innocence is unfounded. Holloway says the first-degree rape of  . . . [the victim] for which he was prosecuted here he was the 1990 one when . . . [the victim] was four-years old. *See Holloway's Petition for Writ of Habeas Corpus*, at p. 8-9.  In reality,

---

[11]  The documents were various documents from the Randolph County DHR investigation file.

[12]  Diligence is not a threshold enquiry; rather, the timeliness of an actual innocence claim is a factor to consider in determining if a petitioner is entitled to an exception to a limitation or procedural bar. *McQuiggin*, ___ U.S. at ___, 133 S.Ct. at 1936.

however, the rape of . . . [the victim] that Holloway was prosecuted for was *not*
the 1990 one when . . . [the victim] was four-years old; rather, it was the 1999
one when . . . [the victim] was twelve-years old.

(Doc. # 23 at 4-5).

Regarding this surprising, apparent concession, Holloway first notes that the

respondents' admission that the victim was twelve years old proves he could not be convicted

of first degree rape because one of the elements of a violation of ALA. CODE § 13A-6-61 is

that the victim must be a person "who is less than 12 years old."  Additionally, Holloway

refers to the plea colloquy which he characterizes as proving the victim was twelve years old,

not less than twelve.

> COURT:        Are you guilty as charged of rape in the first
>               degree, a Class A felony?
>
> DEFENDANT:    Yes, sir.
>
> COURT:        Okay. Tell the Court what you did in that case that
>               resulted in the charge against you.
>
> DEFENDANT:    I had sex with an underage female.
>
> COURT:        Who was that?
>
> DEFENDANT:    . . . [the victim]
>
> COURT:        What age person is she?
>
> DEFENDANT:    Twelve.
>
> COURT:        Twelve. All right. Based on your plea of guilty, I
>               find that you are guilty of rape in the first degree

17

as charged in count one of the indictment.[13]

(Doc. # 23-3 at 9).

E. Holloway's Actual Innocence Claims Lack Merit.  Aside from the respondents' lack of decisiveness about how to address Holloway's claims, the ambiguity in this case arises from the failure of the rape indictment to state a date on which the offense occurred. From the very first of his filings in state court, Holloway has seized on that lack of precision as a vehicle for advancing his alternating claims of innocence.  When it is advantageous, Holloway argues that he is innocent of the crime to which he pled guilty because of Dr. Horn's report and his daughter's alleged recantation which he claims proves he did not have sexual intercourse with her when she was four years old.  On the other hand, Holloway argues he is innocent of the first degree rape of his daughter because when he had sex with her she was older than twelve years old, and a first degree rape charge has as an element that the victim is less than twelve years old.  Neither the respondents nor the record do anything to clear up this ambiguity, but it does not matter.  Regardless of which scenario is considered, Holloway has not made a sufficient evidentiary showing of actual innocence.

An overarching consideration applicable to both scenarios is the plea agreements Holloway made in both the Randolph and Calhoun County cases.  As a result of those agreements, Holloway pled guilty to two counts of rape in the first degree and one count of

---

[13] Any suggestion that Holloway did not understand the charge against him lacks foundation.  As the colloquy shows, he admitted to first degree rape.  Both the written plea agreement (doc. # 14-3 at 70) and the explanation of rights form (doc. # 14-3 at 71) refer to the charge as first degree rape.  Holloway received real notice of the true nature of the charge.  *See Smith v. O'Grady*, 312 U.S. 329 (1941).

18

sodomy for which he was sentenced to three concurrent terms of seventeen years imprisonment.  Under Alabama law those offenses are Class A offenses for which the maximum term of imprisonment is either life or 99 years and not less than 10 years.  ALA. CODE § 13A-5-6.  Holloway thus obtained an excellent outcome resulting from the plea bargain in these three cases.[14]  This consideration strongly militates against a conclusion that Holloway is actually innocent or would not have pled guilty had he known about the allegedly exculpatory information.

Holloway is correct that an element of first degree rape under Alabama law is that the victim be less than twelve years old.  Holloway argues that he is innocent because

> [N]o reasonable juror would have found Holloway guilty beyond a reasonable doubt of the criminal offense of rape in the first degree under the age of twelve absent of any evidence of the essential element of the criminal offense which requires that Holloway engage in sexual intercourse with N.H. a female less than twelve years of age.[15]

(Doc. # 38 at 6).

Holloway bases that assertion on his reading of the plea colloquy during which he says the trial judge asked him "the age of the alleged victim and Holloway responded twelve."

---

[14]  The court reaches this conclusion with confidence.  The record in *Holloway v. Davenport*, 3:11-cv-436-WKW (M.D. Ala. 2013), contains the presentence reports from Calhoun County which detail the facts of those rape and sodomy cases showing a shocking depravity of mind and indifference to other persons.  (Doc. # 27-11 at 10-12, 3:11-cv-436)(sealed).  Holloway stated to the probation officer that "[t]he only reason this happened is because I was high on drugs and . . . [the victim, a twelve year old female] was talking about having sex."  (*Id.* at 12, 3:11-cv-436)(sealed).

[15]  For purposes of this discussion the court assumes that Holloway's claim is a factual and not legal innocence claim.  *See Bousley v. United States*, 523 U.S. 614, 624 (1998) (actual innocence means factual innocence, not mere legal insufficiency).

(Doc. # 38 at 7). As recounted verbatim above, this is not at all what happened during the plea. Rather, Holloway admitted that he had sex with an "underage female." Regarding the victim, the trial judge then asked him, "What age person is she?" Holloway responded, "Twelve." This latter exchange cannot legitimately be characterized as establishing that *at the time* he had sex with the victim, she was twelve or older. More importantly, Holloway's argument about age is most assuredly not "new reliable evidence." Holloway is the victim's father, and he certainly knew her age when he pled guilty. Additionally, there is the inculpatory evidence from the victim who was interviewed in February 2003. "[The victim] called [the social worker] stating that she is scared because her father has threatened her if she tells what he has done to her. She stated her father has had sex with her for several years and she has been afraid to tell." (Doc. # 23-5 at 12)(sealed). The victim was born in August 1987 (*id*. at 19); therefore, at the time of the interview she was 15 years old. Holloway himself adverts to a "1999 rape" during which the victim would have been under the age of twelve until her August birthday.

All of these observations about the facts simply demonstrate that Holloway has failed to show that this is the extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). This is all the more evident because Holloway pled guilty, and "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings. Solemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977). "A plea of guilty and the ensuing

conviction comprehend all of the factual and legal elements necessary to sustain a binding,

final judgment of guilt and a lawful sentence." *United States v. Broce,* 488 U.S. 563, 569

(1989). Holloway's protestations about the age of the victim are insufficient to overcome

his plea's formidable barrier to meeting the narrow actual innocence exception.

Holloway's other actual innocence argument focuses on the rape scenario which

concerns events that took place when N.H. was four years old. At that time Holloway took

his daughter on a weekend trip with him.[16] Upon their return, he was called for an interview

with the Randolph County Department of Human Resources (DHR) concerning an allegation

that he had sexually abused his child during that trip. (Doc. # 16-1 at 8-13). Holloway

denied the allegations, and no action was taken against him. It bears repeating how

Holloway explains the events leading up to him being charged with first degree rape. In his

*pro se* appellate brief challenging the denial of his Rule 32 petition, he describes the facts as

follows.

> Approximately 11 years later N . . . was being interviewed by Calhoun
> County DHR. During this interview N . . . made a statement to Calhoun
> County DHR "that when she was four, she went on a truck trip with her daddy
> (Mr. Holloway) and that once they returned home her aunt . . . had seen blood
> in her panties and N. stated that when her aunt . . . questioned her, she told her
> aunt . . . that her daddy had had sex with her."

> Calhoun County DHR turned this statement over to Randolph County

---

[16] Holloway is a truck driver.

DHR and the Randolph County District Attorney's office. Who then indicted Mr. Holloway . . .[17]

(Doc. # 16-1 at 9).

In his Rule 32 petition, Holloway recites the following facts.

However at the time of the trial or guilty plea as in this instant case [] the petitioner and his defense counsel . . . was both unaware of the fact that when . . . the alleged victim was four years old, the Randolph Co. DHR had sent the alleged victim to a doctor who confirmed that the alleged victim was still a virgin and that no one had ever had sex with her. [T]his is why no charges were ever pressed against this petitioner when this allegation was made originally and investigated. [T]his doctor's report which is in the possession of Randolph Co. DHR does establish that this petitioner is innocent of the crime which he was charged.

The petitioner learned of this doctor's report only one month ago during a conversation between his self and his mother . . .

This petitioner spoke with his mother about this statement being the same statement that was made some 11 years ago and his mother . . . informed him (the petitioner) that Randolph Co. DHR had taken the alleged victim to the doctor and that the doctor confirmed that no one had ever had sex with the alleged victim, when this statement was originally made . . .

This petitioner avers that had this evidence been disclosed to the petitioner at the time when discovery was provided that he would not have signed a guilty plea to a crime in which he was actually innocent.

However and contrary to the facts, the State withheld this exculpatory evidence and by doing so left the petitioner without any way to defend his self and forced the petitioner to enter a guilty plea to a crime in which he was

---

[17] Holloway continually maintains that because the indictment cited the second degree rape statute, the grand jury meant to indict him for second degree rape. The court has already addressed that argument; however, the facts surrounding Holloway's plea show that he was fully aware that he was pleading guilty to first degree rape. All of the plea documents reflect that charge and during the plea colloquy, Holloway admitted he was guilty to that charge.

actually innocent.[18]

(Doc. # 14-3 at 51-52).

As earlier recounted, in support of his actual innocence contention, Holloway attached to his § 2254 habeas petition four affidavits, two from himself and two from his sister. These affidavits make several claims.

1.   N. "confessed" in 2009 that when she was four she was examined by a doctor who found her hymen was intact and that there were no signs of sexual abuse "because she had never been sexually penetrated." (Doc. # 1-1 at 2.); (Doc. # 1-2 at 1).

2.   N has said on numerous occasions that Holloway never touched her in any way and that he is in fact innocent. (Doc. # 1-1 at 2).

3.   N also had a mental examination which showed that she was "making these allegations up and that she didn't even know what the word sex even meant at that time." (Doc. # 1-2 at 1).

4.   "Holloway signed the guilty plea and the alleged victim . . . appeared before . . . [the trial judge] approximately 15 minutes later and testified to . . . [the trial judge] that she had lied and that the allegations made against Holloway were false and that Holloway had never committed any such act/crime.

[The trial judge] addressed Holloway in open court and inform Holloway that the alleged victim . . . wanted to recant her testimony. However, . . . [the trial judge] inform Holloway that he would not allow the alleged victim's testimony and that he . . . would proceed with sentencing.

---

[18] Holloway frames one of his issues as a *Brady v. Maryland*, 373 U.S. 83 (1963), issue contending that the prosecution failed to turn over the exculpatory doctor's report. However, the Supreme Court has held that "the Constitution does not require the prosecutor to share all useful information with the defendant" prior to a guilty plea. *See United States v. Ruiz,* 536 U.S. 622, 628 (2002) (impeachment evidence); *United States v. Baez-Arrogo*, 553 F. App'x 922, 925 (11th Cir. 2014). Thus, even if such a report existed, it is not at all clear that he was entitled to its disclosure prior to trial because *Brady* is a right designed to insure the integrity of a trial. *See Matthew v. Johnson*, 201 F.3d 353, 361 (5th Cir. 2000) ("The *Brady* rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation").

> Holloway requested that his attorney . . . withdraw the guilty plea; however, . . . [the trial judge] refused to allow Holloway to withdraw his guilty plea and sentenced Holloway to seventeen (17) years in the Alabama Department of Corrections.
>
> [The victim] not only testified to . . . [the trial judge] that she had falsely accused will Wilford Holloway of rape, but has admitted numerous times since that day that the allegations against Holloway were in fact false to me as well as several others and that Holloway is falsely imprisoned and is in fact innocent."

(Doc. # 1-3 at 2).

The evidentiary standard Holloway must meet is well known.  He must show based on new evidence, "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327, 329. The "reasonable doubt" standard is not to be determined on the basis of the district court's independent judgment, but should be based on the district court's "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. The petitioner must support the actual innocence claim "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324, 115 S.Ct. at 865. A petitioner meets the "threshold showing of innocence" justifying "a review of the merits of the constitutional claims" if the new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317.  These affidavits miss the mark for a number of reasons.

The affidavits are inherently suspect.  They are from only Holloway and his sister. *See Milton v. Sec'y, Dep't of Corr.,* 347 F. App'x 528, 531-32 (11th Cir. 2009) (Affidavits

24

suspect because of relationship to petitioner).   The statements about the victim's recantation have little indicia of reliability.   First, they are hearsay.   Secondly, the alleged courtroom recantation is not supported in the record which contains the plea colloquy transcript which is devoid of any mention of any recantation.   Thirdly, there is no affidavit from N supporting the contention that her statements about Holloway are false.   And finally, the recantation is not new evidence.   The affidavits show that Holloway and his sister were present at the time of the alleged recantation.   They offer no explanation for why they waited so long to bring this claim forward.

The allegations about the report of Dr. Horn bear further discussion.   In general Holloway contends that after four year old N stated he had sex with her, Dr. Horn examined her and made a report containing exculpatory information.   Holloway contends that even though his lawyer requested discovery, this report was not provided to him and that he would not have pleaded guilty if this report had been disclosed to him.

Holloway contends throughout that he and his family diligently pursued evidence of his innocence and that only in 2009 did he learn of the examination from his mother.   "This petitioner spoke with his mother . . . [who informed him] that Randolph Co. DHR had taken the alleged victim to the doctor and that the doctor confirmed that no one had ever had sex with the alleged victim . . ."   (Doc. # 14-3 at 51-52).   The so-called evidence about the physical examination of N is neither new evidence nor is it reliable.   Holloway does not explain how his mother came to learn of this evidence, and he does not explain why she

waited so long to disclose the examination.  It strains credulity to believe that no family member would have known of the examination of a four year old child.

In several different documents Holloway makes statements about the contents of the medical examination report.  But again, Holloway does not reveal how he obtained the report; when he obtained the report; or how he has such detailed knowledge about the report's contents.  And, suspicion is especially warranted here because Holloway and the other affiant refer to the report; they describe the report, but they do not produce the report. Yet Holloway has in the course of his postconviction state court proceedings and proceedings in this court submitted numerous other documents supporting his theory.  And, in each instance in which Holloway relates the contents of the doctor's report, he explicates it differently.[19]  More importantly, Holloway's reliance on his claim that the report proves that N's hymen was intact does not rise to proof that no reasonable, properly instructed juror would have found petitioner guilty beyond a reasonable doubt.  Under Alabama law, the term "sexual intercourse" "has its ordinary meaning and occurs upon any penetration, however slight; emission is not required."  ALA. CODE § 13A-6-60(1).  Thus, an intact hymen, while a relevant fact which could be considered by a jury, is not dispositive.  *See e.g., Seales v.*

---

[19]  "The Randoplh (sic) County Department of Human Resources case file contained a physical examination report, in which Dr. Horn concluded that the alleged victims hymen was intact, taht (sic) she never engaged in sexual intercourse and had never been sexually penetrated." (Doc. # 2 at 20). "No one ever had sex with the alleged victim . . ." (*Id.*).  "Dr. Horns report confirmed no signs of sexual abuse, no tears, no abrasions etc. Dr. Horns report also confirmed that N . . . had never had sexual intercourse of any kind . . ." (Doc. # 16-1 at 9).  "Dr. Horn confirmed in his report that N . . . had not been sexually abused in any kind of way and that she was in fact still a virgin." (Doc. # 16-1 at 18).  "Dr. Horn states that N . . . was still a virgin . . ." (Doc. # 16-1 at 20).

*State*, 581 So. 2d 1192, 1197 (Ala. 1991) ("[Even though the victim's hymen was intact,] [t]here was certainly sufficient evidence from which the jury could have reasonably inferred that Seales's penis had penetrated the victim's 'pudendum' or 'vulva,' and, consequently, that Seales had had "sexual intercourse" with the victim . . .").

Holloway's contention that he would not have pled guilty if he had had Dr. Horn's report likewise strains credulity.  The record establishes that his plea to the first degree rape charge in Randolph County was part of the plea bargain process that involved the Calhoun County charges of first degree rape and sodomy of his girlfriend's daughter.  The resulting concurrent seventeen years sentences certainly represented "the least amount of time possible"[20] (doc. # 16-1 at 11) for these charges which could have led to Holloway's life imprisonment.

## IV.  Conclusion

Holloway has failed to adduce new, reliable evidence which casts doubt on his guilt established by his guilty plea.  None of his so-called new evidence shows that it is more likely than not that no reasonable juror would have convicted him in the light of this evidence, most of which cannot be characterized as new and certainly not reliable.  This *Schlup* new evidence standard is demanding, *House v. Bell*, 547 U.S. 518, 538 (2006), and Holloway does not meet those demands.

---

[20]This phrase is in Holloway's own words.  He uses it in conjunction with his argument that he was forced to plead guilty because he had no defense without the medical examination report.  No doubt he fails to see the irony of these words in reference to the extremely lenient sentences he received for his crimes.

Accordingly, it is the Recommendation of the Magistrate Judge that the petition for habeas relief filed pursuant to 28 U.S.C. § 2254 be DENIED.  It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before September 24, 2014**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 10th day of September, 2014.


            /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

28